UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Finnie Hood, Corine Elam, and Burton
Hood, on behalf of themselves and all
other persons similarly situated,

        Plaintiffs,

v.

Ford Motor Company and UAW Retirees
Medical Benefits Trust, jointly and
severally,

        Defendants.

_____/

Case No. 11-10649

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING FORD'S MOTION TO SET ASIDE THE CLERK'S ENTRY OF DEFAULT [14] AND CONVERTING DEFENDANTS' MOTIONS TO DISMISS INTO MOTIONS FOR SUMMARY JUDGMENT AND GRANTING THE MOTIONS FOR SUMMARY JUDGMENT [21, 15]**

Plaintiffs Finnie Hood, Corine Elam, and Burton Hood have filed this proposed class action ERISA[1] case against Defendants[2] to recover allegedly unpaid benefits that Plaintiffs argue that they are entitled to under collective bargaining agreements entered into by the parties. Plaintiffs also request that the Court enjoin Trust from failing to pay future benefits.[3]

---

[1]Employee Retirement Income Security Act, as amended, 29 U.S.C. §1001 *et seq.* The parties do not dispute that ERISA governs this action or that Defendants' collective bargaining agreements set up employee benefits plans as defined by ERISA.

[2]Ford Motor Company and the International Union, United Automotive, Aerospace, and Agricultural Implement Workers of America Retiree Medical Benefits Trust (Trust).

[3]Plaintiffs additionally seek to hold Ford and Trust liable under a breach of fiduciary duty theory for their alleged failure to pay the benefits. Defendants have moved to strike Plaintiffs' jury demand. The Court need not discuss these issues at this time as the administrative remedies analysis and outcome requires the Court to dismiss this case

Before the Court are Ford's motion to set aside the clerk's entry of default and Defendants' individual motions to dismiss. For the reasons stated below, the Court GRANTS Ford's motion to set aside the clerk's entry of default. The Court also converts Defendants' motions to dismiss into motions for summary judgment and grants these motions because there is not a genuine issue of material fact that Plaintiffs have failed to exhaust their administrative remedies.[4]

## I.    Facts

### A. Procedural background

On February 16, 2011, Plaintiffs filed a complaint against Ford and Trust. (Dkt. 1.) Summons were issued and then, on April 11, 2011, Plaintiffs filed a certificate of service/summons returned executed against Ford. (Dkts. 4, 5, 6.) That certificate of service shows that Ford was personally served at "1 American Drive, Dearborn, M[ichigan]–Ford World Headquarters," and was received by "Sharon." (Dkt. 6.) As the docket reflects, Ford's answer was due on April 28, 2011. (*Id.*) Also on April 11, 2011, Plaintiffs filed an amended complaint. (Dkt. 7.) A little over two weeks later, on April 29, 2011, Plaintiffs requested a clerk's entry of default against Ford. (Dkt. 9.) The request reads that "the summons and complaint were served on April 7, 2011." (*Id.*) Plaintiffs

---

without prejudice.

[4]Ford requests that the Court convert the motion to dismiss into a motion for summary judgment. (Ford's Reply at 7.) Trust requests the same as well. (Trust's Reply at 6-7.) The Court exercises its discretion to do so. The Court and the parties discussed this option at the hearing on July 27, 2011. And the Court has given the parties the opportunity to submit additional materials for the Court to consider.

2

received the default that same day.  (Dkts. 9, 10.)  Less than a week later, on May 3, 2011,

Ford filed its motion to set aside the clerk's entry of default.  (Dkt. 14.)

### B.  Facts relating to motion to dismiss

On April 11, 20011, Plaintiffs filed their amended class action complaint against Ford

and Trust.  Plaintiffs have alleged that Ford and Trust violated ERISA and breached the

ERISA-imposed fiduciary duty owed to Plaintiffs.

Plaintiffs allege that a collective bargaining agreement between Ford and UAW

required Ford to provide certain retiree health care benefits–a Medicare Part B Special

premium reimbursement–to Plaintiffs until January 1, 2010.  (Compl. ¶ 20.)  This benefit

was to help Plaintiffs offset the cost of the Medicare Part B premium that was deducted

from their monthly Social Security checks.  (Compl. ¶ 23.)  Plaintiffs allege that Ford failed

to pay these benefits to them.

Sometime later, Ford and UAW entered into a settlement agreement, pursuant to

which Trust 'took over' the payment of the benefits, effective January 1, 2010.  (Compl. ¶

25.)  Plaintiffs allege that Trust has failed to pay the benefits.  (Compl. ¶ 29.)

### C.  Class action facts

Plaintiffs allege that the class would be composed of former Ford retirees who were

represented by UAW, and who had met the requirements at the time of their retirement to

receive the Medicare Part B Premium special benefit.  (Compl. ¶ 12.)  Plaintiffs estimate

that there are ten thousand people who could be class members.  (*Id.* ¶ 13.)  Plaintiffs

further state that the claim that each class member would have "is essentially identical."

(*Id.* ¶ 14.)  They finally allege that there are common questions of law and fact, that the

relief sought is common to all the parties, and that the class representatives would adequately represent the class members' claims.  (*Id.* ¶¶ 15-17.)

### D. Requested relief

Plaintiffs request that the Court: certify this case as a class action, award the class the benefits to which they are allegedly entitled or money damages, permanently enjoin the Trust from failing to pay the required benefits, and award reasonable attorneys' fees and any other relief the Court finds appropriate.  (Compl. at 11-12.)

## II.   Analysis

### A. Ford's motion to set aside the clerk's entry of default

#### 1.  Set aside default standard of review

Under Federal Rule of Civil Procedure 55(c), for good cause shown, the court may set aside an entry of default.  In exercising its discretion whether to set aside an entry of default, the court considers the following three factors: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether culpable conduct of the defendant led to the default. *See United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983).  A "district court enjoys considerable latitude . . . [in granting] a defendant relief from a default entry."  *United States v. Real Prop., All Furnishings Known As Bridwell's Grocery*, 195 F.3d 8119, 820 (6th Cir. 1999) (internal quotation marks and citation omitted).  But  "when the first two factors militate in favor of setting aside the entry, it is an abuse of discretion for a district court to deny a Rule 55(c) motion in the absence of a wilful failure of the moving party to appear and plead." *Shepard Claims Serv., Inc. v. William Darrah & Assoc.*, 796 F.2d 190, 194 (6th Cir. 1986).

4

Federal courts, in their determinations to set aside defaults, strongly favor decisions on the merits. *See Berthelsen v. Kane*, 907 F.2d 617, 620 (6th Cir. 1990). In fact, the policy is so strong that even when a defendant wilfully evades service of process, a court may set aside a default. *Id.* at 622.

### 2. The Court will set aside the default

In analyzing the three factors to set aside a default, the Court finds that Ford fully satisfies the first two factors. The Court, as a result, will set aside the entry of default. Regarding the third factor, although the Court recognizes that Ford failed to answer the complaint timely, it does not view Ford's actions so egregious as to not set aside the default.

### a. Plaintiff has not shown prejudice

Plaintiffs have not shown the Court that it will suffer any prejudice in setting aside the default. Even if a plaintiff will suffer some delay in its recovery if a trial on the merits takes place "delay alone is not a sufficient basis for establishing prejudice." *INVST Fin. Grp., Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 398 (6th Cir. 1987). Types of prejudice that would warrant not setting aside a default include "loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Id.*

Plaintiffs allege that they have been prejudiced–because they are old, living on their retirement income, and that, with each passing day (due to Ford's conduct), they are closer to death. (Pl.'s Resp. to Ford's Mot. to Set Aside Default at 7.) The argument continues: Ford is delaying this lawsuit as long as possible so that "it may continue to wrongfully deny its elderly retirees the full benefits to which they are entitled." (*Id.*)

5

The Court is not persuaded by Plaintiffs' argument. Both parties devote a significant amount of their briefs to disputing whether Ford received service of the amended complaint. There are issues regarding service. But the Court does not feel the need to discuss these issues, because Plaintiffs have not shown prejudice. Ford appeared in this case a mere four days after the clerk's entry of default. No significant delay exists.

The Court further notes that both Trust and Ford have filed motions to dismiss the complaint, to which Plaintiffs have responded.

### b. Ford has asserted a meritorious defense

Ford satisfies the second factor by asserting a meritorious defense. A defendant must state "a defense good at law" in order to establish a meritorious defense. *INVST Fin. Grp.*, 815 F.2d at 398-99. The asserted meritorious defense is sufficient so long as it contains "'event a hint of a suggestion' which, [if] proven at trial, would constitute a complete defense." *Id*. A defendant does not need to support its defense with "detailed factual allegations to be deemed meritorious." *United States v. $22,050 United States Currency*, 595 F.3d 318, 326 (6th Cir. 2010). Further, a defendant need not demonstrate a likelihood of success on the merits. *Berthelsen*, 907 F.2d at 621-22. Finally, all ambiguous or disputed facts must be resolved in the light most favorable to the defendant. *INVST Fin. Grp.*, 815 F.2d at 398.

Ford has filed a motion to dismiss, to which Plaintiffs have responded. As the Court will discuss later in this opinion, the defenses Ford raises are meritorious.

### c. Ford's conduct is not so offensive that the Court must deny its request

Considering the third factor, culpability, the Court finds that Ford's conduct is not so offensive that it must deny their request. And even if the Court were to find Ford acted in a culpable manner, that action does not require the Court to deny Ford's request. For the Court to find Ford's conduct culpable it would have to find that Ford "display[ed] either an attempt to thwart judicial proceedings or a reckless disregard for effect of conduct on those proceedings." *Shepard Claims Serv.*, 796 F.2d at 194.

Culpability does not always necessitate a court denying a motion to set aside. In *Berthelsen*, the Sixth Circuit found that the defendant was culpable in actively evading service of process. 907 F.2d at 622. There, the defendant claimed the plaintiff did not properly serve him; but the district court found that he must have had actual notice of the lawsuit. *Id.* Although the court explained that the defendant's culpability contributed to the entry of default, it still set the default aside. *Id.* The court set aside the default in spite of the defendant's culpability because "the plaintiff has failed to demonstrate that he will be prejudiced by the reopening of this case, and the defendant has shown that he has a meritorious defense to the suit." *Id.*

Here, as in *Berthelsen*, Ford argues that it did not receive service. But as in *Berthelsen*, contrary evidence exists. Although Ford may not have a credible excuse as to their failure of filing an answer, the Court recognizes that its failure to appear in this case does not outweigh the policy favoring decisions on the merits. Ford filed this motion to set aside the entry of default a mere four days after the clerk granted this entry. This filing as well as the fact that Plaintiffs will not suffer prejudice and Ford has a meritorious defense, warrant the Court's setting aside the default.

**B. Defendants' motions to dismiss**

7

### 1. 12(b)(6) motion to dismiss standard of review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief.  *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996).  To survive a Rule 12(b)(6) motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted).  *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).  "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009).  The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1950 (internal quotation marks and citation omitted).  Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (internal quotation marks and citation omitted).  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions,

8

are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*  In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Id.* at 1949 (internal quotation marks and citation omitted).

In reviewing and ruling upon a motion to dismiss, a court may look to documents that are "not formally incorporated by reference or attached to a complaint," if the "document is referred to in the complaint and central to the plaintiff's claims."  *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (citation omitted).  A court's consideration of these documents does not convert the motion to dismiss into a motion for summary judgment.  *Id.*  (citation omitted).

But if the parties present matters outside of and not referenced in the pleadings on a Rule 12(b)(6) motion, and a court does not exclude these matters, "the motion must be treated as one for summary judgment under Rule 56."  Fed.R.Civ.P. 12(d).  "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

### 2.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the

nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Revised

Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the
> assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions,
> documents, electronically stored information, affidavits or declarations,
> stipulations (including those made for purposes of the motion only), admissions,
> interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence
> of a genuine dispute, or that an adverse party cannot produce admissible
> evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The revised Rule also provides the consequences of failing to

properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address
> another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including
> the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).  "The court need consider only the cited materials, but it may

consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more

than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Ultimately a district court must determine whether the record as a whole presents a

genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most

10

favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

### 2. Analysis

#### a. Plaintiffs' ERISA 29 U.S.C. § 1132(a)(1)(B) claim

Plaintiffs first, pursuant to 29 U.S.C. § 1132(a)(1)(B), have sued Defendants "to recover benefits due to [them] under the terms of [their] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B).  They sue Ford for the Medicare Special B Premium benefits that they claim they were entitled to while Ford 'ran' the governing employee benefit plan–that is, until January 1, 2010.  They sue Trust for the Medicare Special B Premium benefits for the unpaid benefits as of that date, as well as an injunction requiring Trust to pay all future benefits.

Defendants argue that the Court must dismiss Plaintiffs' § 1132(a)(1)(B) claim because Plaintiffs have not exhausted their administrative remedies.  Plaintiffs argue that the Court may not dismiss a complaint for failure to plead exhaustion of administrative remedies.  Plaintiffs additionally argue that the governing CBAs do not set forth an administrative claims procedure for Medicare Special B Premium benefits.

The Court rejects both of Plaintiffs' arguments.  The Court finds that this case is precisely the type of case in which an administrative claims procedure would be most useful.  The Court has the latitude to enforce the exhaustion requirement and chooses to do so here.  The Court therefore takes into consideration those outside matters the parties have presented and treats this motion as a motion for summary judgment.  Because no

11

issue of fact exists that Plaintiffs have not exhausted their administrative remedies, the Court grants Defendants' motions without prejudice and dismisses this case.

### i. There is a strong preference for exhaustion of remedies in ERISA cases

In the Sixth Circuit, "[i]t is well settled that ERISA plan beneficiaries must exhaust administrative remedies prior to bringing a suit for recovery on an individual claim." *Shields v. UnumProvident Corp.*, 415 F. App'x 686, 689 (6th Cir. 2011) (alteration removed) (quoting *Hill v. Blue Cross and Blue Shield of Michigan*, 409 F.3d 710, 717-22 (6th Cir. 2005). "The exhaustion requirement enables plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, (6th Cir. 1997) (quotation marks and citations omitted; alterations removed). Exhaustion also serves:

(1)  To help reduce the number of frivolous law-suits under ERISA.

(2)  To promote the consistent treatment of claims for benefits.

(3)  To provide a nonadversarial method of claims settlement.

(4)  To minimize the costs of claims settlement for all concerned.

(5)  To enhance the ability of trustees of benefit plans to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes.

(6)  To enhance the ability of trustees of benefit plans to correct their errors.

(7)  To enhance the ability of trustees of benefits plans to interpret plan provisions.

(8)  To help assemble a factual record which will assist a court in reviewing the fiduciaries' actions.

*Constantino v. TRW, Inc.*, 13 F.3d 969, 975 (6th Cir. 1994).

12

Despite the exhaustion requirement, the Sixth Circuit has recognized a general exception: a plaintiff need not exhaust administrative remedies "when the remedy obtainable through administrative remedies would be inadequate or the denial of the beneficiary's claim is so certain as to make exhaustion futile." *Shields*, 415 F. App'x at 689 (quoting *Hill*, 409 F.3d at 718-19). "To avoid the exhaustion requirement, the plaintiff must make a clear and positive indication of futility." *Id.* (quotation marks and citation omitted).

Although there is a strong preference for administrative exhaustion, "[t]he application of the administrative exhaustion requirement in an ERISA case is committed to the sound discretion of the district court and thus can be disturbed on appeal only if there has been an abuse of discretion." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 (6th Cir. 1998) (citations omitted) (see also *Welsh v. Wachovia Corp.*, 191 F. App'x 345, 358, n 5 (6th Cir. 2006), citing *Fallick* and affirming the concept that the exhaustion requirement is committed to the district court's discretion.).

### ii.   Plaintiffs' arguments

Plaintiffs argue that the Court should not dismiss their complaint for failure to exhaust administrative remedies for two reasons: first, because exhaustion of administrative remedies is an affirmative defense that they are not required to plead in their complaint—therefore inappropriate for the Court  to take into consideration on a motion to dismiss; and second, the governing collective bargaining agreements do not provide a claims procedure for beneficiaries who have not received their Medicare Part B Premium benefits, thereby making exhaustion futile. The Court agrees with Plaintiffs as to their first argument—they are not required to plead that they exhausted their administrative remedies

13

in their complaint.  But that does not mean that they do not have to exhaust available administrative remedies before they proceed beyond the initial pleading stages in this Court.  As to Plaintiffs' second argument–that exhaustion is futile because the governing CBAs do not specifically provide for a claims procedure for the Medicare Part B Premium benefit–the Court is not sympathetic to this argument.  As the Court will discuss more fully below, Plaintiffs have not shown that they previously had enrolled/submitted an application for the premium benefit.  And they have not disputed that they failed to seek redress through any procedure before they filed suit.  The Court finds that they have therefore 'jumped the gun' in filing this lawsuit.  The Sixth Circuit has a strong preference for using an administrative claims procedure.  Here, the procedure would serve several purposes of exhaustion: it would allow the plan administrators to correct their errors, interpret plan provisions, and it would help assemble a factual record that would assist the Court in reviewing the fiduciaries' actions.

Given this preference and what the administrative procedure would allow Defendants to do, the Court grants Defendants' requests to convert their motions to dismiss into motions for summary judgment; and the Court also grants their motions because no genuine issue of material fact exists that Plaintiffs did not take advantage of the administrative processes available to them.

### iii.    Exhaustion is an affirmative defense that Plaintiffs are not required to plead in their complaint

Plaintiffs first argue that exhaustion is an affirmative defense that is generally not appropriate for review on a motion to dismiss.  They are correct.  "Although the Sixth Circuit

14

has not addressed the issue, a number of courts have held that exhaustion of administrative remedies under ERISA in an affirmative defense." *Zappley v. The Stride Rite Corp.*, 09-198, 2010 WL 234713, at *4 (W.D.Mich. Jan. 13, 2010) (Quist. J.).[5]  In *Zappley*, the court reviewed other circuits' discussions of this issue, found those discussions persuasive, and concluded "that exhaustion is an affirmative defense." *Id.* This conclusion, the court discussed, is "consistent with the Sixth Circuit's observation that exhaustion in ERISA cases is a discretionary requirement." *Id.* As an affirmative defense, then, "a Rule 12(b)(6) motion is generally not the proper vehicle for asserting lack of exhaustion." *Id.* The right vehicle is a "properly supported motion for summary judgment." *Id.* (citation omitted).[6]  The Court agrees with *Zappley*'s reasoning and conclusion.

The Court therefore denies Defendants' motion to dismiss the complaint due to Plaintiffs' alleged failure to exhaust administrative remedies.  But the Court, of course, has the ability to turn this motion into a motion for summary judgment.  Here, the parties have been given a reasonable opportunity to present materials.  These materials are all that the Court needs to address Plaintiffs' claims at this time.  The Court therefore will treat the motion to dismiss as a motion for summary judgment under Rule 56 pursuant to Rule 12(d). *See Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104-1105 (6th Cir. 2010) (holding

---

[5]The Court recognizes that *Zappley* was decided over a year ago; but to date, the Court has not found that the Sixth Circuit has spoken on the issue.  The Court additionally recognizes that it has analyzed a similar administrative exhaustion issue in a tax context and reasoned and held as the *Zappley* court.  See *Law Offices of Scott E. Combs v. United States*, 767 F.Supp.2d 758 (E.D.Mich. 2011).

[6]The exception to this rule, the *Zappley* court discussed, is when the affirmative defense appears on the face of the complaint. *Zappley*, 2010 WL 234713, at *4. Here, Plaintiffs do not mention exhaustion and therefore the Court should not address it.

that a district court did not abuse its discretion when it considered matters outside of the pleadings and converted a Rule 12(b)(6) motion into a Rule 56 motion).[7]

### iv.   The parties' additional materials

The parties have submitted additional materials in the forms of affidavits and declarations.  Ford has submitted an affidavit stating:

> In order to receive the Medicare Part B premium reimbursement benefit, according to the CBA, a retiree must submit an application showing proof of enrollment.  The UAW has never asserted otherwise.

> To date, none of the named Plaintiffs' applications for the Medicare Part B premium reimbursement benefit have been denied.  Plaintiff Finney Hood applied for the benefit on February 7, 2011, was approved, and will receive the maximum benefit payable by Ford on June 1, 2011.  Plaintiff Corine Elam applied for the benefit on February 5, 2011, was approved, and will receive the maximum benefit payable by Ford on July 1, 2011.  Plaintiff Burton Hood has been receiving benefits since at least 2009.

> The named Plaintiffs did not file a claim or appeal under the CBA's claims procedure.

---

[7]But even if the Court did not convert the motions, dismissal could still be appropriate. For the Sixth Circuit has affirmed district courts that have dismissed a complaint for failure to exhaust administrative remedies, relying on affidavits.  In *Borman v. Great Atlantic & Pacific Tea Co., Inc.*, 64 F. App'x 524, 528, n 3 (6th Cir. 2003), the Sixth Circuit addressed the district court's dismissal of the plaintiff's complaint for failure to exhaust his administrative remedies. The court noted that the district court properly relied upon an affidavit without transforming the motion to dismiss into a motion for summary judgment. *Id.*  The court reasoned that the district court's usage of the affidavit was proper "because the ERISA plans were central to [the plaintiff's] complaint," and "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."  *Id.* (quoting *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, (6th Cir. 1997)).  The affidavit that court reviewed showed that the plaintiff's company had specific company administrative procedures for the plaintiff to follow for his ERISA claim.  *Id.* at 526-27.  The affidavit also showed that the plaintiff had failed to follow those procedures.  *Id.*

(Ford's Mot. to Dismiss, Ex. C, Kokenakes Decl. ¶ 4.)   Trust has also submitted a declaration.  In it, Trust states

> Finnie Hood currently receives a monthly Medicare Part B Special Benefit from the [Trust] Plan.  The monthly payment . . . began effective March[,] 2011.  The [Trust] Plan made a lump sum retroactive payment of the Medicare Part B Special Benefit to Ms. Hood for the period from January 1, 2010 to March[,] 2011.  Ms. Hood has not requested payment of the Medicare Part B Special Benefit under the [Trust] Plan's claim procedures nor filed an appeal in connection with the Medicare Part B Special Benefit under the [Trust] Plan's appeal procedures.

(Trust's Reply, 2d Rzepecki Decl. ¶ 2.)   Trust has also submitted a similar statement regarding the other named plaintiffs, Corine Elam and Burton Hood.  (*Id.* ¶¶ 2, 3.)  Both are currently receiving the monthly benefit.   (*Id.*)   And neither "requested payment of the Medicare Part B Special Benefit under the [Trust] Plan's claim procedures nor filed an appeal in connection with the Medicare Part B Special Benefit under the [Trust] Plan's appeal procedures.   (*Id.*)

In response, Plaintiffs allege that  they have not received the full amount of benefits to which they are entitled.  (Dkt. 28, Pls.' Supplemental Decl.)  They do not argue that they ever enrolled for the benefit or requested the benefit from Ford or Trust before they filed this lawsuit.

### v.   The CBAs do require that Plaintiffs enroll in the Medicare Part B program, but the CBAs do not explicitly state a claims procedure for the Medicare Part B Premium benefits

Plaintiffs next argue that exhaustion is not even required with the Medicare Part B Premium benefits because the governing CBAs do not lay out a claims procedure for these

17

types of benefits.   There are two CBAs at issue, and those two CBAs each have a
Medicare Part B Premium benefit definition and a claims procedure section.

### (1).   The Trust CBA

The Trust CBA defines the benefits:

> A Medicare Part B Premium Benefit is provided to help you pay for Medicare
> Part B coverage.   You will receive this benefit if you are a Retiree or
> Surviving Spouse eligible to receive a benefit under the UAW-Ford
> Retirement Plan (other than a benefit payable as a result of a deferred vested
> benefit or a pre-retirement survivor benefit).   The Medicare Part B premium
> benefit for 2010 is $76.20 per month.
>
> **Retirees and Surviving Spouses eligible for Medicare Part B must enroll
> and maintain continued enrollment in Medicare Part B to be eligible to
> receive this Benefit.**   Retirees under age 65 who are disabled or have End
> Sta[g]e Renal Disease are also eligible to receive the Benefit, provided they
> are enrolled in Medicare Part B. If you are eligible, the Medicare Part B
> Premium Benefit will be included in your pension check.

(UAW's Am. Mot. to Dismiss, Ex. B, Schedule of Benefits for UAW-Ford Retirees at 4.)

(emphasis added.)

There are several relevant Trust CBA sections.

Section 14.1–Insured Benefits Claims and Appeals

> Claims for insured benefits (i.e., claims involving an HMO, Medicare
> Advantage, or other plan option) will be decided by the applicable Carrier.
> To the extent of its responsibility to make determinations on claims for
> benefits, including the review of adverse benefit determinations, the Carrier
> has full authority to interpret and apply, in its discretion, the terms of the Plan,
> including ambiguous terms.   The decision of the Carrier is final and binding.
> Claims and appeals procedures for insured benefits are as set forth in
> materials provided by the applicable Carrier.

Section 14.2–Self-Funded Benefit Claims and Appeals–In General

18

(a) Claims for self-funded benefits (i.e., claims for services under the TCN or PPO plan options and the prescription drug benefit) will be decided by the Committee, the applicable Carrier, or other delegate. To the extent of its responsibility to make determinations on claims for benefits, including the review of adverse benefit determinations, the Committee, the applicable Carrier, or other delegate has full authority to interpret and apply, in its discretion, the terms of the Plan, including ambiguous terms. The decision of such person is final and binding.

(UAW's Am. Mot. to Dismiss, Ex. A, UAW Retiree Medical Benefits Trust Excerpts.)

These CBA sections separate the benefit claims into two types: insured benefits claims and appeals and self-funded benefit claims and appeals. Plaintiffs are correct in pointing out that the Medicare Part B Premium benefit does not facially fall into either category. Trust's CBA also has a general claims and procedures. The Trust's Article XIV–Claims and Appeals Procedures:

Section 14.3–Claims Procedures

The claims procedures in this subsection will apply to claims for health benefits.

(a) Definition of a Claim

(1) A Claim is a request for a Plan benefit made by an Enrollee . . . or that claimant's authorized representative, in accordance with the Plan's reasonable claims procedures."

(b) Claim Requirements

(1) To trigger the Plan's claims processing procedures, a Claim must:

be submitted in accordance with the Plan, be received by the proper entity, identify a specific claimant/patient; identify a specific medical condition or symptom; provide a description and date of a specific treatment, service or product, identify the provider's contact information, etc.

19

(UAW's Am. Mot. to Dismiss, Ex. A, UAW Retiree Medical Benefits Trust Excerpts.)  This

section does not limit the types of claims that must go through certain procedures.

### (2).   The Ford-UAW CBA

The Ford-UAW CBA also defines the benefits:

XI.  Special Benefit

(1)  **A retired employee (i) age 65 or older, or (ii) under age 65 and enrolled in the voluntary "Medicare" coverage that is available under the Federal Social Security Act by making contributions . . . shall receive, subject to subsection (2) . . . a monthly special benefit** . . . provided that in no event shall such payment commence prior to the first day of the month following the earlier of (i) the month during which age sixty-five (65) is attained, or (ii) receipt by the Company of application on a form provided for this purpose from an otherwise eligible individual under age sixty-five (65) . . . .

(2)  Effective January 1, 1991, the Special Benefit payable to an individual who was not enrolled in Medicare Part B as of October 22, 1990, but who was receiving a Special Benefit under [a different program,] will be limited to $28.00 per month.  Such an individual will become entitled  to the amounts set forth in the schedule in subsection (1) **above, upon proof of enrollment in Medicare Part B.  Thereafter, however, continued receipt will be contingent on maintenance of Medicare Part B enrollment.**

For an individual enrolled in Medicare Part B as of October 22, 1990, or who first becomes eligible for Medicare Part B on or after October 22, 1990, receipt of a Special Benefit on and after January 1, 1991 **is contingent upon maintenance of Medicare Part B enrollment.**

(Ford's Mot. to Dismiss, Ex. B, Collective Bargaining Agreement Excerpts at 436.)

(emphasis added.)  The Ford-UAW CBA also lists its own claims procedures.

Section 5.  Claims  Procedures

(a) Denial of a Claim

If a claim for benefits or participation (other than a disability pension claim) is denied in whole or in part, the claimant will receive written notification from either the Plan Administrator or an employee of the Board of Administration within ninety (90) days from the date the claim for benefits or participation is received.

\*\*\*

The denial of a claim shall include (i) the specific reason or reasons for the denial; (ii) specific reference to pertinent Plan provisions on which the denial is based along with a copy of such Plan provisions or a statement that one will be furnished at no charge upon the claimant's request; (iii) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or in formation is necessary; and (iv) appropriate information as to the steps to be taken if the claimant wishes to submit his or her claim for review, along with a statement of the claimant's right to bring a civil action under Section 502(a) of ERISA following an adverse benefit determination on review.   If the Plan Administrator or an employee of the Board of Administration determines that an extension of time from processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial ninety (90) day period.  In no event shall such extension of time and the date by which the Plan expects to render the determination.

(*Id.*)

\*\*\*

(d)  Review of Denial of the Claim to the Board of Administration

The CBA also sets forth a review process when the Plan Administrator or an employee of the Board of Administration denies a claim.

(e) Participant Limitations for Filing Claims

No legal action may be brought by a participant, dependent, beneficiary, or the estate or legal representative thereof for entitlement to benefits under the Plan, until after the claims and appeals procedures of the Plan have been exhausted and, unless a different period of limitation is specifically provided under ERISA, no later than two years after such claim has accrued.  No other actions may be brought against the Plan more than six months after such claim has accrued.

21

(Ford's Mot. to Dismiss, Ex. B, Collective Bargaining Agreement Excerpts at 150-56.)

These claims procedures appear to define "claim" broadly. Plaintiffs' claims therefore would appear to fall into this category.

The Court first notes that both CBAs require enrollment in Medicare Part B. The Trust CBA requires an individual to enroll in and maintain enrollment in the Medicare Part B program. The Trust CBA does not mention that an individual needs to submit proof of enrollment, though. The Ford-UAW CBA requires an individual to enroll and submit proof of enrollment. Here, Plaintiffs have not alleged that they enrolled in the Medicare Part B program; they instead argue that these benefits are "automatic" and that they need to do nothing to receive them. (Pls.' Resp. to Ford's Mot. to Dismiss at 7.) The Court finds that enrollment is required, and under the Ford-UAW CBA, Plaintiffs were required to submit proof of that enrollment. Plaintiffs therefore have filed suit prematurely since they have not completed a necessary step in receiving their benefits. *See Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 133, n 3 (2d Cir. 2001) (citing *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1279 (5th Cir. 1990) ("[Because] there is no indication that [plaintiff] ever applied for his pension benefits prior to filing suit," allowing plaintiff to make his initial claim for pension benefits by filing a lawsuit would undermine the policies underlying the exhaustion requirement).")

Even if Plaintiffs' lack of proof of enrollment were not enough, exhaustion principles require the Court to give plan administrators the opportunity to interpret and amend and apply plans that may be deficient in certain areas. Here, although Plaintiffs are correct that the CBAs do not set forth a precise claims procedure for Medical Part B Premium benefits,

22

the Court finds that the CBAs' general claims procedures may include those benefits. And, noting that one of the purposes of the exhaustion requirement is to allow plan administrators, such as Defendants, to interpret and correct any errors in a plan, the Court finds that Ford and Trust should be afforded the opportunity to interpret their plans, correct any errors, create a record as to the fiduciaries' roles, and attempt to resolve this matter extra-judicially.

The Court therefore finds Plaintiffs must first look to Ford and Trust for any claimed deficiencies in their benefits.

## III.   Conclusion

For the above-stated reasons, the GRANTS Ford's motion to set aside the clerk's entry of default, converts Defendants' motion to dismiss into motions for summary judgment, GRANTS these motions, and therefore DISMISSES this case WITHOUT PREJUDICE.

SO ORDERED.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge


Dated:  August 19, 2011


I hereby certify that a copy of the foregoing document was served upon counsel of record on August 19, 2011, by electronic and/or ordinary mail.

s/Carol A. Hemeyer

23

Case Manager